The appellant was indicted for sexual abuse, in violation of § 13A-5-40(a)(3), Code of Alabama (1975), and capital murder, §13A-5-40(a)(8), Code of Alabama (1975). He was found guilty of sexual abuse in the first degree and of murder as a lesser offense included in capital murder. On the murder conviction, the appellant was sentenced to life in prison, was fined $100 to be paid the victims compensation fund, was ordered to pay $3000 to the victim's family for burial expenses, and was ordered to pay court costs. On the sexual abuse conviction, he was sentenced to ten years in the penitentiary, was fined $100 to be paid to the victims compensation fund, and was ordered to pay court costs.
The appellant argues that the trial court erred in allowing into evidence the waiver of rights forms which he had signed prior to making two videotaped statements and erred also in admitting one of the videotapes themselves. He argues that, in each instance, he did not understand his Miranda rights and that, even if he did understand those rights, he did not knowingly, intelligently, and voluntarily waive them. He also argues, however, that when one of the videotapes which contained a confession was allowed into evidence, he should have been allowed to admit the other tape which contained a denial.
The record indicates that the victim, a student at Sumter County High School, disappeared while waiting for a ride from a school dance following a Greek show. The appellant was a special education student at Sumter County High School; he was classified by his teachers as "trainable mentally retarded." He had been drinking on the night in question and there was testimony that he had been involved in an altercation with another boy. Approximately two weeks later, an employee of an Alabama Power Company office located close to the high school detected an odor coming from behind the company's parking lot and contacted the police department. Thereafter, the bug-infested and badly decomposed body of the victim was found in a wooded area behind the Alabama Power Company office. The victim was identified eventually by her dental records. Her bra and blouse were found around her neck, and panties and blue jeans were found close to the body.
The police began conducting interviews of numerous students, the appellant among *Page 1121 
them. Initially, the appellant was not a suspect in the case and he told the police that he had observed someone else abduct the victim. The appellant was interviewed on other occasions and, according to a police officer, he would often come to the interviews when the police had no plans to interview him. The officer stated that, when the other interviews were concluded, the appellant would "stick around" and the police would "[go] ahead and [talk] to him." The officer testified that the appellant was subsequently contacted for an interview to be conducted on videotape in order to "clear up statements that he had made prior to that date." The officer stated that he was advised of his constitutional rights at that time "not because he was a suspect, but there was a possibility he was a suspect." The appellant signed a waiver form and made a videotaped statement. He was then allowed to leave and, approximately four weeks later, the appellant was again interviewed. He was advised of his Miranda rights, he read those rights back to an employee with the Alabama Bureau of Investigation, and he subsequently gave another videotaped statement.
The record indicates that the first statement given by the appellant contained a denial of any involvement in the victim's death, while the second statement was an admission of guilt and a description of the circumstances. The appellant made a motion to suppress both of these videotaped statements and a hearing was held on the motion. Following the hearing, the trial court ruled that both tapes were admissible. Thereafter, the State offered and introduced into evidence the taped statement which contained the confession; it was introduced during the examination of a State's witness who had been present during the making of the statement. On cross-examination of the witness, the appellant attempted to admit into evidence the other videotape, which contained his denial of any involvement. The prosecutor objected to its admission, and the trial court ruled that the tape was inadmissible hearsay.
The appellant argues that he should have been allowed to admit this tape into evidence. However, the tape was clearly an out-of-court statement which was being offered to prove the truth of the matter asserted and, therefore, constituted illegal hearsay. C. Gamble, McElroy's Alabama Evidence (3d ed. 1977), § 242.01(1). See also McElroy's, § 242.02 ("If a self-serving declaration is inadmissible as tending to prove the truth of the matter asserted, the inadmissibility results from the hearsay rule."). The statement in this tape does not fall within any of the exceptions to the hearsay rule, as it did not contain a confession and was not made as part of theres gestae, but rather was made in answer to questioning and lacked the requisite spontaneity. C. Gamble, McElroy's AlabamaEvidence (3d ed. 1977), § 265.01(3). Thus, although the trial judge had ruled the tape admissible as having been knowingly, intelligently, and voluntarily made, he properly held that the tape was inadmissible as illegal hearsay.
The appellant's entire argument that the waiver forms and statements were inadmissible hinges on his contention that he lacked the mental capacity to understand the nature of his rights and to voluntarily waive them and make a statement, because of his mental retardation and low I.Q. The record is clear that the appellant was given his Miranda rights and that he did sign the waivers. The State also presented the testimony of several officials who were present when the appellant gave his statements. They testified that the appellant appeared to understand the Miranda rights; that he acknowledged that he understood them; and that he voluntarily waived them. There was testimony that the appellant did not appear to be under the influence of alcohol or drugs on either occasion and was not offered any hope of reward or made any threats in order to get his statement. Moreover, an employee with the Alabama Bureau of Investigation testified that, before the appellant gave his second statement, which contained the confession, he was questioned by the A.B.I. employee in order to determine his educational level. The witness testified that, *Page 1122 
in his opinion, the appellant understood his rights. Another investigator with the Alabama Bureau of Investigation testified that he had spoken to the appellant on several occasions and that he understood general conversation.
The appellant presented the testimony of an expert who had reviewed a number of tests that had previously been conducted on the appellant, and who noted that the appellant had received an I.Q. score of less than 40 when he was a child. That expert then conducted his own test on the appellant and determined that he had an overall I.Q. of 55. He stated that he did not believe that the appellant could understand certain basic terms such as "right," and that the appellant had very little common sense. He further opined that a person such as the appellant would tend to be gullible and would attempt to please authority figures by lying. The expert stated that the appellant was mentally retarded. The appellant also introduced the testimony of one of his special education teachers, who testified that the appellant never got above the kindergarten level in reading and that in math he was performing on a first-grade level. She also stated that, in his social relationships, the appellant functioned at a first-grade level. In her opinion, the appellant could not have understood his Miranda rights.
The State presented, on rebuttal, the testimony of three experts. The chief of psychiatry at Taylor Hardin Secure Medical Facility testified that a panel of three psychologists had evaluated the appellant and had found that he was borderline or mildly retarded; that he was competent to stand trial; and that he had an I.Q. score of 68 or 69. One of the members of this panel concluded that the appellant was "street smart." One of the State's experts testified that the appellant's reading abilities were below third-grade level, but that he had the intellectual abilities to read at a much higher level. Another State's expert testified that he found no evidence of asocial or undersocialized behavior by the appellant.
 "[I]n most cases, the defendant's mental deficiency will be but one factor to be considered in the 'totality of the circumstances' surrounding the confession. In some cases, however, it may be the most important or controlling factor. See e.g. Dover v. State, 227 So.2d 296 (Miss. 1969); People v. Langston, 57 Mich. App. 666, 226 N.W.2d 686
(1975). See also Redwine v. State, 258 Ala. 196, 61 So.2d 724 (1952). The importance of this factor increases with the degree of the accused's mental retardation because he must be able to understand his right to remain silent and to an attorney before he can waive them. It is a knowing and intelligent waiver that is required. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)."
Garrett v. State, 369 So.2d 833, 836 (Ala. 1979). In Garrett v.State, supra, the defendant was classified by his teachers as "trainable, but not educable." He could only take care of his daily needs and could not remember his class schedule or understand any abstract words. However, the court in Garrett
declined to determine whether the defendant was so mentally retarded that his confession was involuntary. In Cardwell v.State, 544 So.2d 987 (Ala.Cr.App. 1989), the defendant was classified as "low functioning and . . . in the mild mental retardation range." Furthermore, there was testimony, as in the present case, that the appellant was slightly intoxicated at the time of the offense. This court held:
 "[T]he presence of a diminished mental capacity, coupled with use of alcohol or drugs, will not warrant a finding that the confessions were not voluntary. Having a low I.Q. will not invalidate the statement unless the I.Q. is so very low that the person making the statement absolutely cannot understand his Miranda rights. Arnold v. State, 448 So.2d 489 (Ala.Crim.App. 1984). The evidence in this case falls far short of proof of such a condition."
Id., at 993.
The State presented evidence that the appellant was not retarded but was in the borderline range with an I.Q. of 68 or 69. The expert testimony in this case regarding *Page 1123 
the appellant's intellectual level or mental capacity does not foreclose the finding of a knowing and intelligent waiver as defined by constitutional requirements." See Sasser v. State,497 So.2d 1131, 1134 (Ala.Cr.App. 1986), in which this court held that a defendant with an I.Q. of 65 had made a knowing, intelligent, and voluntary confession. The State's experts contradicted the appellant's experts, who had indicated that the appellant could not have understood or voluntarily waived his rights. This presented a conflict in the evidence, which only the finder of fact could resolve. Sasser v. State, supra, at 1134. The State presented a prima facie showing of knowing, intelligent, and voluntary waivers and statements by the appellant. Based on the record, and after viewing and hearing the videotaped statement, we find that the trial judge's finding of voluntariness is not palpably wrong or contrary to the great weight of the evidence. Womack v. State,435 So.2d 754 (Ala.Cr.App.), affirmed, 435 So.2d 766 (Ala.), cert. denied, 464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983).
AFFIRMED.
All the Judges concur.