The appellee was indicted for the offense of murder. She pleaded not guilty and filed a motion to suppress all of her statements. The appellee argued that, at the time of her arrest and subsequent questioning, she was not competent to voluntarily, knowingly, or intelligently waive her constitutional rights. A hearing was held on the motion, following which the trial judge ordered as follows:
 "[I]n that the statements are presumed involuntary in light of the negative expert testimony regarding the defendant's ability to understand and making knowing and intelligent waiver of her Miranda rights regardless of the officer's ample explanation of her rights, the motion to suppress is granted."
At the hearing the State presented the testimony of a detective with the Dothan Police Department who testified that he participated in taking a statement from the defendant, and that, prior to doing so, he advised her of her rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966). The witness testified that the appellee stated that she understood each right and further testified that she signed the waiver form. The detective testified that he wrote "4th grade" under her name, because it was the department's policy to always ask the person giving the statement to name the last grade that they completed in school. The detective testified that he observed the appellee's demeanor and that she did not appear to be intoxicated. He further testified that he had no reason to believe that she did not understand her rights and that she stated several times that she understood them. He testified that she appeared to understand everything that was said to her and that she also appeared to wish to be cooperative. He testified that her statement was not coerced or induced in any manner. On cross-examination, he testified that he did observe a number of beer cans in her house, but that no blood-alcohol test was taken and that he did not believe that she was intoxicated.
Another investigator with the Dothan Police Department testified that he was also present when the appellee's statement was taken and that no one threatened or made any promises to the appellee in his presence. He testified that she was advised of her rights and stated that she understood them. He stated that he saw no indication that she did not understand her rights. He testified, however, that he believed that the appellee had been drinking, because he could smell alcohol on her and because she stated to him that she had had a drink. However, he testified that he did not believe that she was intoxicated when the statement was taken. He further testified, "Yes, she was under the influence of the liquor because she had drank it, but it was my opinion she had not been drinking enough to impair her decision-making process." On cross-examination, he testified that he saw a number of beer cans and a bottle of whiskey sitting around the house. He testified that, when he entered the house, the appellee was complaining that the victim had shot her in the foot; however, the paramedics later determined that she had stepped in a pool of blood in the floor and had not been shot. He testified that the reason he was concerned with advising the appellee of herMiranda rights a number of times was not because she was having difficulty understanding what was being said, but because of her fourth-grade education. He testified that she could not read and could only print her name. He further testified that the appellee did seem to have some difficulty understanding "the way I asked some of the questions."
A corporal with the Dothan Police Department testified that he was present at the scene and that he also advised the appellee of her Miranda rights. He testified that he did not recall whether the appellee indicated that she understood her rights, rather he remembered that she *Page 600 
"just began talking." He testified that he believed she had been drinking, because of the odor of alcohol on her breath. He testified that he recalled having seen three or four beer cans scattered around; however, he testified that he did not believe she was intoxicated or under the influence, despite her belief that she had been shot in the foot.
A patrol officer with the Dothan Police Department testified that he was present when the appellee was informed of her rights and that she simply began talking, without being questioned. He testified that he noted an odor of alcohol on the appellee, as well in the entire house. He testified that "[s]he didn't appear to be really that drunk" and that her speech was very clear.
The appellee presented the testimony of a forensic psychologist who had been retained by the State to evaluate the appellee. He testified that, from his testing, he believed that the appellee "appeared to be marginally competent in several areas, such as understanding what she is charged with" and "having a general understanding of the rules and functions of various courtroom personnel" and "having a basic knowledge of the various pleas." He further noted that, although she provided a detailed description of the alleged offense, "it was brought to [his] attention" that the appellee's description tended to vary, according to whom she was speaking. The psychologist testified, however, that he could not "technically make a statement about her competency to waive herMiranda rights." He noted that she did indicate that she had been intoxicated at the time she made the statement. He testified:
 "I believe that the question would arise was she competent at the time she waived her Miranda Rights, and I think that is a viable question that could be investigated; however, I have not conducted any investigation or any evaluation specifically geared to assessing her competency to waive her Miranda Rights."
The appellee also presented the testimony of a clinical psychologist who stated that he met with the appellee in order to make a psychological evaluation "to determine her functioning level, as well as to provide information, hopefully, as to her functioning level at the time of the alleged instances." He testified that he determined that the appellee had an overall intelligence quotient (IQ) of 63, which is in the mentally defective range. He testified that her verbal IQ was 69, while her performance IQ was 60. Her memory skill indicated a memory quotient of 70, "which would be in the lower one percentile of the population for memory factors." He testified that the appellee had an extremely limited understanding of her constitutional rights and that her ability to comprehend both the charges against her and the judicial system was extremely limited. He testified that he believed that her academic skills would be below that of someone in the fourth grade and more comparable to someone in the second grade. Moreover, he opined that the ingestion of alcohol "would complicate an already extremely limited condition and situation, probably further impairing her, depending on how much she had consumed." On cross-examination, he testified that he did not look at or listen to the statement given by the appellee and that such information might have helped him in making his decision.
A trial court's findings on a motion to suppress are binding on an appellate court, unless they are clearly erroneous.State v. Gaston, 512 So.2d 799, 801 (Ala.Cr.App. 1987).
 "The findings of the trial court on a motion to suppress are binding on this Court unless they are clearly erroneous. United States v. Gunn, 428 F.2d 1057, 1060 (5th Cir. 1970). The trial judge's determination of the voluntariness of a confession 'is entitled to great weight on appeal and will not be disturbed unless it appears to be contrary to the great weight of evidence and manifestly wrong.' Harris v. State, 280 Ala. 468, 470-71, 195 So.2d 521 (1967). 'When confessions are admitted on controverted questions of fact, this court will not revise the rulings of the lower court, admitting *Page 601 
them, unless they appear to be manifestly wrong.' Phillips v. State, 248 Ala. 510, 520, 28 So.2d 542
(1947); Thompson v. State, 347 So.2d 1371, 1375
(Ala.Cr.App.), cert. denied, Ex parte Thompson, 347 So.2d 1377 (Ala. 1977), cert. denied, 434 U.S. 1018, 98 S.Ct. 740, 54 L.Ed.2d 765 (1978). 'We know of no principle which will authorize us, in this case, to depart from the rule laid down above.' Bonner v. State, 55 Ala. 242, 247 (1876)."
Simmons v. State, 428 So.2d 218, 219 (Ala.Cr.App. 1983). But seeCleckler v. State, 570 So.2d 796 (Ala.Cr.App. 1990), andHutchinson v. State, 516 So.2d 889, 894 (Ala.Cr.App. 1987) (wherein the standard of review is held to be abuse of discretion by the trial court). In the present case, we find that the trial court's determination as to the admissibility of the appellee's statement, based on the testimony presented at trial, was clearly erroneous.
 "The fact that a defendant may suffer from a mental impairment or low intelligence will not, without other evidence, render a confession involuntary. See Colorado v. Connelly, 479 U.S. 157, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986); Singleton v. Thigpen, 847 F.2d 668 (11th Cir. 1988); Whittle v. State, 518 So.2d 793 (Ala.Cr.App. 1987); Holladay v. State, 549 So.2d 122 (Ala.Cr.App. 1988), aff'd, 549 So.2d 135 (Ala. 1989). The United States Supreme Court, in Connelly, 479 U.S. at 164, 107 S.Ct. at 520, 93 L.Ed.2d at 482, stated: 'Absent police conduct causally related to the confession, there is simply no basis for concluding that any State actor has deprived a criminal defendant of due process of law.' "
Baker v. State, 557 So.2d 851, 853 (Ala.Cr.App. 1990).
Moreover, the evidence concerning the appellee's intoxication at the time of the statement was not sufficient to prove that her statement was involuntary.
 " '[U]nless intoxication, in and of itself, so impairs the defendant's mind that he is "unconscious of the meaning of his words," the fact that the defendant was intoxicated at the time he confessed is simply one factor to be considered when reviewing the totality of the circumstances surrounding the confession.' Carr v. State, 545 So.2d 820, 824
(Ala.Cr.App. 1989). 'The intoxicated condition of an accused when he makes a confession, unless it goes to the extent of mania, does not affect the admissibility in evidence of the confession, but may affect its weight and credibility.' Callahan v. State, 557 So.2d 1292, 1300 (Ala.Cr.App.), affirmed, 557 So.2d 1311 (Ala. 1989)."
White v. State, 587 So.2d 1218 (Ala.Cr.App. 1990).
Furthermore, the appellee's expert witnesses both conceded that their opinion testimony was subjective. Expert opinion testimony may not be binding on a trial court, even if it is uncontradicted. "[A]n expert opinion is not conclusive on the trier of fact even if the testimony was uncontroverted. Furthermore, the weight and credibility to be attributed to an expert witness is for the trier of fact. See Stewart v. Busby,51 Ala. App. 242, 284 So.2d 269 (1973); 9 Ala. Digest Evidence
Key No. 568(1), 570." Clark Lumber Co. v. Thornton,360 So.2d 1019, 1021 (Ala.Civ.App. 1978). See also workmen's compensation cases, such as Jackson v. Dunlop Tire RubberCorp., 487 So.2d 940, 941 (Ala.Civ.App. 1986); Gibson v.Southern Stone Co., 518 So.2d 730, 731 (Ala.Civ.App. 1987);Jim Walter Resources, Inc. v. Bentley, 560 So.2d 1072, 1074
(Ala.Civ.App. 1990); Ex parte Beaver Valley Corp.,477 So.2d 408, 411 (Ala. 1985). In Jefferson County v. Sulzby,468 So.2d 112, 116 (Ala. 1985), the Alabama Supreme Court stated that, "In Alabama, opinion testimony of an expert witness is binding upon a jury only when such testimony concerns a subject which is exclusively within the knowledge of experts and the testimony is uncontroverted." We do not believe that this case involves such a situation. The training and expertise of the police officers who stated that the appellee appeared to understand what she was saying and that she did not appear to be intoxicated was established; this court has held on numerous occasions that such officers may establish the voluntariness *Page 602 
of a statement. See, e.g., Cleckler v. State, supra; Hutchinsonv. State, supra.
Statements of appellants, whose circumstances were similar to those of the present appellee, have consistently been held to be voluntary and admissible for consideration by the jury. InHolloway v. State, 561 So.2d 1119, 1121-22 (Ala.Cr.App. 1990), officers who were present when the appellant gave his statement testified that he appeared to understand his Miranda rights. The appellant presented the testimony of an expert who stated that he had tested the appellant and had determined that the appellant had an overall IQ of 55. The expert further testified that he did not believe that the appellant could even understand such a basic term as "right" and that, in his opinion, the appellant was mentally retarded. The appellant also introduced the testimony of one of his special education teachers to the effect that he never passed the kindergarten level in reading and that, in math, he was performing on a first-grade level. She further testified that, in her opinion, the appellant could not have understood his Miranda rights. The State then presented the testimony of experts from the Taylor Hardin Secure Medical Facility who had evaluated the appellant and had found him to be mildly retarded with an IQ of 68 or 69. They also opined that the appellant was "street smart" and had a higher intellectual ability than his reading abilities. The appellant's statement was held to be admissible. See alsoGarrett v. State, 369 So.2d 833 (Ala. 1979).
In McCray v. State, 591 So.2d 108 (Ala.Cr.App. 1991), officials testified that although the appellant smelled of alcohol, "he 'could handle himself pretty well.' " The officers also testified that he was read his rights and that he stated that he understood them. A blood-alcohol test administered on the appellant approximately an hour after his statement was taken indicated a blood-alcohol level of .16 percent. A clinical psychologist testified that the appellant had an IQ of 65 and that he functioned in the mildly mentally retarded range. He further testified that the appellant suffered from a significant memory impairment and that this impairment would be more severe if the appellant had a blood-alcohol level of .16 percent. The psychologist also testified that the appellant had organic brain syndrome as a result of chronic alcohol abuse. The court, however, found that the appellant was aware of his rights when he decided to give his statement. See also Clecklerv. State, supra (wherein, among other claims, the appellant alleged that his statement was involuntary because he had a low IQ — 68, had been classified as "educable mentally retarded," and because he took 10 or 12 Valium tablets before giving his statement).
Because the State presented sufficient evidence that the appellee's statement was voluntarily made, the trial court's determination was clearly erroneous, and the statement should have been admitted for the jury's consideration.
This cause is hereby remanded to the trial court for trial.
REVERSED AND REMANDED.
All Judges concur.