In July, 1989, the defendant, Tracy Monique Caldwell, was indicted for murder, in violation of § 13A-6-2, Code of Alabama 1975; burglary in the first degree, in violation of § 13A-7-5; robbery in the first degree, in violation of § 13A-8-41; and kidnapping in the first degree, in violation of § 13A-6-43. After the Alabama Department of Mental Health found Caldwell competent to stand trial, she pleaded not guilty on June 21, 1990. On February 28, 1991, she moved to suppress certain statements she had made on November 10 and November 15, 1989. The trial judge held a hearing on the motion to suppress and during that hearing the judge heard expert testimony offered by the defendant and by the State. Their testimony differed sharply. Caldwell's expert testified that her first I.Q. assessment administered in high school resulted in a score of 55. The most recent score, taken in 1991, was 71. Moreover, her expert described her as "educable mentally retarded." Further evidence at the hearing showed that she was given a "Grisso test," which is designed to determine a person's ability to comprehend a Miranda warning. Her expert actually interviewed her and concluded, based in part on the "Grisso test", that the defendant could not comprehend a Miranda warning.
The State's expert witness, who did not interview Caldwell, criticized the "Grisso test" administered to her. The State's witness was also critical of the methodology used by Caldwell's expert. The State's expert reviewed the videotaped statements given by Caldwell and determined that she was competent to understand a Miranda warning and to waive her rights.
The State also offered the testimony of the law enforcement officials who interviewed Caldwell. These officials testified that her waiver was given voluntarily and without coercion from the police.
The evidence seemed to indicate that the police officers treated Caldwell as they would treat any other defendant. The officers indicated that they took care to explain "several words" to her. For example, the word "coerce" was specifically explained *Page 1151 
to her during the administration of the Miranda warnings. However, testimony for Caldwell indicated that "several words" were not explained to her. Rather, her evidence indicated that only the word "coerce" was explained.
On January 14, 1992, after hearing all of the evidence, the trial judge granted the defendant's motion to suppress on the grounds that she could not have understood a Miranda warning. The State appeals this ruling.
The facts are undisputed that on November 19, 1989, Tuscaloosa, Alabama, law enforcement officials were investigating the disappearance of Ms. Corinne Harless from her Tuscaloosa home. Ms. Harless's automobile, a 1985 model Mercury Cougar, was also missing from the residence. Police located Ms. Harless's vehicle at a Jack's restaurant in Tuscaloosa, and, when the police located it, Caldwell, and a man were in possession of it. Caldwell was arrested. Corporal M.A. Flowers of the Tuscaloosa Police Department proceeded to the scene of the arrest, and upon arrival, advised Caldwell of her rights; she orally waived them. Corporal Flowers placed Caldwell in his patrol car and proceeded to police headquarters. While they were in the patrol car, Corporal Flowers asked Caldwell some questions, and she volunteered information about where she and her boyfriend had stayed the previous night. She stated that she did not know the whereabouts of Ms. Harless.
Later, on the same day, Investigator John Steele read Caldwell her Miranda warnings and her waiver. The defendant indicated that she understood her rights and the waiver, and she signed the waiver. She gave a statement regarding the location of Ms. Harless's body. She then accompanied law enforcement officers to search for the body. Eventually, the body was found in a location other than the one Caldwell had described. Following the search, Caldwell was taken back to police headquarters and questioned again. Another investigator, Alan Fondren, advised her of her rights and after she had waived the rights, she gave a videotaped statement. After she gave this statement, she was released.
On November 15, 1989, Caldwell was arrested pursuant to an arrest warrant. Again, she was advised of her rights and again she waived them. She then gave a second videotaped statement to police.
On appeal, the State argues that the voluntariness of a statement for the purposes of the Fifth Amendment, does not depend on whether the defendant comprehends the statement ofMiranda. The State contends further, that equating an understanding of Miranda warnings with voluntariness cannot be defended. This argument has no merit. In its order of January 14, 1992, the trial court plainly stated, "After a review of all the evidence, it is the opinion of this court that the defendant did not understand her Miranda rights and did not freely and voluntarily waive said rights." (R. 132.) While the trial court never stated that the voluntariness of a statement is dependent on comprehending the Miranda rights this court has held previously: "Whether a confession or inculpatory statement was knowingly and voluntarily made is a question of law and a proper determination for the trial judge." Agee v. State,465 So.2d 1196, 1200 (Ala.Crim.App. 1984). It is important that a waiver of Miranda rights be knowing and voluntary. Certainly, whether a defendant can comprehend her rights is an important factor to be considered in determining whether her waiver of these rights is voluntary.
The State contends that compliance with Miranda procedure renders a custodial statement admissible. Specifically, the State contends that the law enforcement officials involved in this case properly followed Miranda procedure and, thus, that the defendant's subsequent statements to police should be admissible. The State further argues that a policy that permits the courts to "go behind an arrestee's assertion of understanding of the Miranda warning and 'make sweeping inquiries into the state of mind of . . .' the arrestee at the time of that assertion, to see if he or she really . . . understood the warning" is improper. *Page 1152 
However, we determine that the law of this State dictates that trial courts have the very authority to do that which the State argues against. We find that mere compliance withMiranda procedure does not necessarily render a custodial statement admissible.
The record indicates that the police gave thorough warnings and explained the waiver of Miranda rights to the defendant. In each situation and prior to each statement, the defendant waived her rights. The test to determine the admissibility of a confession is a two-part inquiry: (1) the court considers whether the Government or the State has complied with theMiranda procedure and (2) upon a finding of compliance withMiranda procedure, the court then rules on whether the confession was voluntary. United States v. Sims, 719 F.2d 375,378 (1983), cert. denied, 465 U.S. 1034, 104 S.Ct. 1304,79 L.Ed.2d 703 (1984).
 "Additionally, all confessions are presumed to be involuntary. It is the duty of the trial court to determine if the confession was voluntarily given based on all of the facts surrounding the giving of the confession. When there is a conflict in the evidence surrounding the taking of the confession, and there is sufficient evidence to support the trial court's finding, this court will not disturb the finding of the trial court on appeal, unless it appears contrary to the great weight of the evidence, or is manifestly wrong, or unjust. The trial judge need only be convinced from a preponderance of the evidence that the confession was knowingly and voluntarily made."
Koger v. State, 443 So.2d 1343, 1345-1346
(Ala.Crim.App. 1983). See also Holloway v. State, 561 So.2d 1119,1121-1123 (Ala.Crim.App. 1990); Stallworth v. State,445 So.2d 998, 999 (Ala.Crim.App. 1984).
In this case, it is clear that proper Miranda warnings were given. Nevertheless, the trial court had the responsibility to determine the voluntariness of the confession. This case presents conflicting evidence as to whether the defendant was competent to understand her Miranda rights, and thus could voluntarily waive them. The testimony of the expert witnesses differed sharply. Based on the Grisso test, the defendant's expert, who actually interviewed her, concluded that she could not comprehend a Miranda warning.
The State's expert, who did not interview the defendant, determined that she was competent to understand aMiranda warning and waive her rights.
The trial judge was able to observe the defendant's demeanor, and, as finder of fact, was in the best position to resolve the conflict in the evidence. Based upon the evidence presented at the suppression hearing, we find that the trial court's determination that the defendant was unable to comprehend herMiranda rights and thus incompetent to voluntarily waive these rights, is not "manifestly contrary to the great weight of the evidence." Ex parte Matthews, [1992] 601 So.2d 52 (Ala. 1992). Therefore, we cannot reverse the trial court's order suppressing the statements.
The order of the trial court is affirmed.
AFFIRMED.
All the Judges concur.