This case was originally assigned to another judge on the Alabama Court of Criminal Appeals. It was reassigned to Judge Cobb on January 17, 1995.
Rex Allen Phillips, the appellant, was convicted of two counts of first degree rape of a "female who is less than 12 years old," a violation of Ala. Code 1975, § 13A-6-61(a)(3). He was sentenced to life in the penitentiary without the possibility of parole. He raises three issues on appeal.
 I
The appellant confessed to twice having had sexual intercourse with H.N., the nine-year-old victim. C.R. 92. The appellant contends that this confession was involuntary because, he says, he did not have the mental capacity to understand the consequences of waiving his rights underMiranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694
(1966), because he was intoxicated when he gave the statement, and because he was not re-Mirandized immediately before giving the statement.
Officer Dale Merritt, an investigator with the Houston County Sheriffs Department, testified that he took two statements from the appellant. The first statement was taken in Merritt's office before the appellant was arrested. Before making this statement, the appellant was advised of his rights pursuant toMiranda and he voluntarily signed a waiver of rights form. Merritt determined that the appellant could not read very well, even though the appellant stated that he had a seventh-grade education. Merritt then read each line of the waiver of rights form to the appellant and ascertained that he understood its meaning before the appellant signed the form. The appellant did not say or do anything to indicate to Merritt that he did not understand his rights as they were read to him. The appellant was arrested after giving this statement. However, because the tape recorder used to record the statement malfunctioned, a second statement, which is the subject of appellant's objection, was taken and recorded a few minutes after the first. Before giving this statement, the appellant acknowledged that he had already been advised of his Miranda rights, that he understood these rights and that he voluntarily waived them. This statement was transcribed and introduced at trial. *Page 883 
" 'We have often held that "the fact that a defendant may suffer from a mental impairment or low intelligence will not, without other evidence, render a confession involuntary.' "Dobyne v. State, [Ms. CR-91-1840, April 15, 1994] ___ So.2d ___ (Ala.Crim.App. 1994) (quoting Youngblood v. State,656 So.2d 385, 387 (Ala.Cr.App. 1993) aff'd, 656 So.2d 390). See Clecklerv. State, 570 So.2d 796, 801 (Ala.Cr.App. 1990) ("the appellant could have knowingly and intelligently waived his rights, even though he was classified as trainable mentally retarded"), and the cases cited therein. " 'Whether a confession or inculpatory statement was knowingly and voluntarily made is a question of law and a proper determination for the trial judge.' Agee v.State, 465 So.2d 1196, 1200 (Ala.Crim.App. 1984)." State v.Caldwell, 611 So.2d 1149, 1151 (Ala.Cr.App. 1992), cert. denied, ___ U.S. ___, 114 S.Ct. 284, 126 L.Ed.2d 234 (Ala. 1993),
 " '[T]here is no requirement that a suspect be informed of his constitutional rights before each interrogation in a series of interrogations. C. Gamble McElroy's Alabama Evidence § 201.09 (4th ed. 1991). A determination of whether Miranda warnings must be repeated should be made on a case-by-case basis. . . .
". . . .
 ". . . . [B]ecause the time between the reading and waiving of the appellant's Miranda rights and the subsequent obtaining of evidence was not excessive, and because no intervening act or circumstance occurred that would have required the renewal of the appellant's Miranda warnings, no error occurred. Moreover, the State introduced evidence that the appellant had been reminded of his Miranda warnings before both cited instances."
Johnson v. State, 648 So.2d 629, 637-38 (Ala.Crim.App. 1994) citations omitted. This law applies to the present case.
The record does not support the appellant's contention that he was intoxicated when he gave his statement to Officer Merritt.
 II
The appellant contends that the Officer Merritt failed to "mark" the box containing the sheets that were on H.N.'s bed at the time of the rape "in any way to verify that [the box] would not be tampered with, or [to] distinguish this box from any other box he may have sent to the [Department of Forensic Sciences for testing]." Appellant's brief at page 9. The appellant argues that the chain of custody was insufficient because there was no assurance that the sheets received by the Department of Forensic Sciences were removed from H.N.'s bed, or that they were in substantially the same condition as when they were packaged and shipped.
Merritt testified that he removed the sheets from H.N.'s bed, photographed them, sealed them in a box, and sent the box via United Parcel Service (UPS) to the forensics laboratory in Montgomery. Katherine McGeehand, an employee of the Department of Forensic Sciences, testified that she received the sheets sent by Merritt "completely sealed up" in a box delivered by UPS. R. 144.
There was no suggestion at trial that the sheets had been tampered with. "Circumstantial evidence is generally sufficient to authenticate the item sought to be entered into evidence, except when there appears to be evidence that the item of evidence was tampered with or that a substitution was made while the item was in the custody of the link who has failed to appear and testify." Ex parte Holton, 590 So.2d 918, 920
(Ala. 1991). "A sealed envelope is adequate circumstantial evidence to establish the handling and safeguarding of the item to treat the evidence as authenticated." Gray v. State,600 So.2d 1076, 1079 (Ala.Cr.App. 1992) (citing Ex parte Holton,590 So.2d 918, 920 (Ala. 1991)).
 III
The appellant contends that the State failed to prove a prima facie case of rape in the first degree. Under § 13A-6-61(a)(3), a male commits the crime of rape in the first degree if "he, being 16 years or older, engages in sexual intercourse with a female who is less than 12 years old." *Page 884 
The appellant stated that he "had sex in the front room" with H.W. and then shortly thereafter H.N. got "her damn grease out" and for a second time they "started f_____g right there in [H.N.'s] bedroom." R. 201-02. "Under the appellant's own confession he is guilty of the offense charged, Huggins v.State, 41 Ala. App. 548, 142 So.2d 915, cert. denied, 273 Ala. 708, 142 So.2d 918 (Ala. 1962) consent being no defense to a prosecution under our carnal knowledge statute. Powell v.State, 53 Ala. App. 30, 297 So.2d 163 (1974)." Taylor v. State,361 So.2d 1189, 1192 (Ala.Cr.App. 1978).[1] His confession also corroborates H.N.'s testimony, which is summarized below. " 'A defendant's voluntary confession may . . . be considered corroborative evidence authorizing a conviction. Snoddy v.State, 75 Ala. 23 (1883); Jacks [v. State, 364 So.2d 397
(Ala.Cr.App.), cert. denied, 364 So.2d 406 (Ala. 1978).]' Craigv. State, 376 So.2d 803, 806 (Ala.Cr.App. 1979), writ denied,376 So.2d 807 (Ala. 1979)." Rodgers v. State, 554 So.2d 1123,1124 (Ala.Cr.App. 1989).
Admittedly the nine-year-old victim was a poor witness for the prosecution. In answering questions, she repeatedly stated that she could not remember.
 " ' "Because of the language and communication difficulties of an underage victim, more than a few cases have dealt with the matter of proving what was formerly referred to as a 'statutory rape.' Whether there was actual penetration in a rape prosecution is a question of fact to be determined by the jury."
". . . .
 " '. . . [T]he nature of the penetration that is essential for a rape conviction need not be proved in any particular form of words.' Swint v. State, 455 So.2d 285, 287 (Ala.Crim.App. 1984); Edmonds v. State, 380 So.2d 396, 398
(Ala.Crim.App. 1980)."
Seales v. State, 581 So.2d 1192, 1193-94 (Ala. 1991) (citations omitted).
H.N. testified that the 36-year old appellant "touch[ed]" her in the hallway of her home and that she "tried to get him off [her]" and "call 911". R. 120-21. She stated that the next day she had to go to the hospital to "see if [she] was pregnant inside." Her testimony continued:
 "Q. [Mr. Binford, the prosecutor]: And, where was that inside? When you say inside, can you tell us what you are talking about?
"A. Private.
 "Q. And, when you say private, are you talking about the part between your legs?
"A. Yes, sir.
 "Q. Now, have you heard people call that a vagina before?
"A. Yes, sir.
"Q. Was it your vagina that was hurt?
"A. Yes, sir.
 "Q. Is that what you went to the hospital to get seen about?
"A. Yes, sir.
". . . .
 "Q. You remember, don't you, telling Investigator, Dale Merritt that [the appellant] had had sex with you?
"A. Yes, sir.
". . . .
 "Q. Did you tell him that on the night that it happened?
"A. Yes, sir.
 "Q. Was it the truth when you told the Investigator that?
"A. Yes, sir.
". . . .
 "Q. Did you tell him that [the appellant] had sex with you two times inside that house?
"A. Yes, sir.
"Q. Was that true then?
"A. Yes, sir.
"Q. Is it true now?
"A. Yes, sir. *Page 885 
". . . .
 "Q. Could you show us where [the appellant] was the first time that he had sex with you?
"A. Right here. (Indicating toward the diagram.)
 "Q. Okay. Right there in the hall. And, where did he have sex with you the second time?
"A. (Witness marks the diagram.)
"Q. Did he have sex with you in your room?
"A. Yes.
"Q. Where, on the bed or somewhere else?
"A. Here.
 "Q. Can you mark a spot in here where he had sex with you?
"A. (Witness marks diagram as requested.)
". . . .
 "Q. Who did put their fingers in the [grease in] the frying pan?
"A. [The appellant].
". . . .
 "Q. What did he do after he put his fingers in the frying pan?
"A. Went back to [my] bedroom.
". . . .
 "Q. How did somebody know to take you to the hospital?
"A. My mama found a bruise on me."
R. 120-36.
In addition to H.N.'s testimony, there was also evidence that one of H.N.'s sheets contained blood and semen stains and that Officer Merritt believed that H.N.'s sheets had grease on them. R. 189. See Taylor v. State, 361 So.2d 1189, 1192
(Ala.Cr.App. 1978) ("The sheets were properly identified as coming from the bed of the appellant where the rape occurred, and they tended to show the commission of the crime and the manner in which it was committed because they contained blood and semen. The fact that the toxicologist could not match the blood to that of the prosecutrix went to the credibility of the evidence and not its admissibility.").
The evidence established a prima facie case of rape in the first degree. Based on the above, the judgment of the trial court is due to be and is affirmed.
AFFIRMED.
All the Judges concur.
[1] Section 13-1-133 Ala. Code 1975, which prohibited carnal knowledge of a "girl under 12 years of age" was repealed by § 9901 of Ala. Acts 1977, Act No. 607 (proposing the new Criminal Code). Section 13A-6-61(a)(3) Ala. Code 1975, encompasses the former § 13-1-133 defining one category of rape as when a male "being 16 years or older, engages in sexual intercourse with a female who is less than 12 years old."