The appellant, Darryl Hardy, was charged with three counts of capital murder for the killing of Christian Hill. Count I charged him with murder made capital because he committed it during the course of a robbery, § 13A-5-40(a)(2), Ala. Code 1975; Count II charged him with murder made capital because he committed it by or through the use of a deadly weapon fired or otherwise used within or from a vehicle, § 13A-5-40(a)(18), Ala. Code 1975; and Count III charged him with murder made capital because he committed it by or through the use of a deadly weapon while the victim was in a vehicle, § 13A-5-40(a)(17), Ala. Code 1975. The jury found the appellant guilty of the lesser included offense of felony murder on all three counts, violations of § 13A-6-2(a)(3), Ala. Code 1975. The trial court sentenced him to serve concurrent terms of life in prison on each conviction. The appellant filed a motion for a new trial, which the trial court denied. This appeal followed.
 I.
The appellant argues that the trial court erroneously denied his motion to suppress a statement he made to law enforcement officers.[1] (Issue II in the appellant's brief.) Specifically, he contends that he did not voluntarily make the statement because, "based on his age and mental IQ of 66, the length of time being held in the interrogation room clearly demonstrates that his will was overborne by the pressure and circumstances of his youth." (Appellant's brief at p. 33.) *Page 1119 
 "It has long been held that a confession, or any inculpatory statement, is involuntary if it is either coerced through force or induced through an express or implied promise of leniency. Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568
(1897). In Culombe [v. Connecticut], 367 U.S. [568] at 602, 81 S.Ct. [1860] at 1879, [6 L.Ed.2d 1037 (1961)] the Supreme Court of the United States explained that for a confession to be voluntary, the defendant must have the capacity to exercise his own free will in choosing to confess. If his capacity has been impaired, that is, `if his will has been overborne' by coercion or inducement, then the confession is involuntary and cannot be admitted into evidence. Id. (emphasis added).
 "The Supreme Court has stated that when a court is determining whether a confession was given voluntarily it must consider the `totality of the circumstances.' Boulden v. Holman, 394 U.S. 478, 480, 89 S.Ct. 1138, 1139-40, 22 L.Ed.2d 433 (1969); Greenwald v. Wisconsin, 390 U.S. 519, 521, 88 S.Ct. 1152, 1154, 20 L.Ed.2d 77 (1968); see Beecher v. Alabama, 389 U.S. 35, 38, 88 S.Ct. 189, 191, 19 L.Ed.2d 35 (1967). Alabama courts have also held that a court must consider the totality of the circumstances to determine if the defendant's will was overborne by coercion or inducement. See Ex parte Matthews, 601 So.2d 52, 54 (Ala.) (stating that a court must analyze a confession by looking at the totality of the circumstances), cert. denied, 505 U.S. 1206, 112 S.Ct. 2996, 120 L.Ed.2d 872 (1992); Jackson v. State, 562 So.2d 1373, 1380
(Ala.Crim.App. 1990) (stating that, to admit a confession, a court must determine that the defendant's will was not overborne by pressures and circumstances swirling around him); Eakes v. State, 387 So.2d 855, 859
(Ala.Crim.App. 1978) (stating that the true test to be employed is `whether the defendant's will was overborne at the time he confessed') (emphasis added). Thus, to determine whether McLeod's confession was improperly induced, we must determine if his will was `overborne' by an implied promise of leniency.
". . . .
 ". . . Thus, the test of involuntariness of a confession, or other inculpatory statement, is not whether the defendant bargained with the police, but whether in his discussions with the police, which may have included bargaining, the defendant's will was overborne by `apprehension of harm or hope of favor.' See Gaddy, 698 So.2d at 1154 (quoting Ex parte Weeks, 531 So.2d 643, 644 (Ala. 1988)); Culombe, 367 U.S. at 602, 81 S.Ct. at 1879; Jackson, 562 So.2d at 1380. To determine if a defendant's will has been overborne, we must assess `the conduct of the law enforcement officials in creating pressure and the suspect's capacity to resist that pressure'; `[t]he defendant's personal characteristics as well as his prior experience with the criminal justice system are factors to be considered in determining [the defendant's] susceptibility to police pressures.' Jackson, 562 So.2d at 1380-81
(citations omitted)."
McLeod v. State, 718 So.2d 727, 729-30 (Ala. 1998) (footnote omitted). Further,
 "`"[w]e have often held that `the fact that a defendant may suffer from a mental impairment or low intelligence will not, without other evidence, render a confession involuntary.' See Colorado v. Connelly, 479 U.S. 157, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986); Baker v. State, 599 So.2d 60, 63 (Ala.Cr.App. 1991), State v. Austin, [596 So.2d 598 (Ala.Crim.App. 1991)], Holladay v. State, 549 So.2d 122 (Ala. *Page 1120 
Cr.App. 1988), aff'd, 549 So.2d 135 (Ala. 1989), cert. denied, 493 U.S. 1012, 110 S.Ct. 575, 107 L.Ed.2d 569 (1989)."
 "`Youngblood v. State, 656 So.2d 385, 387
(Ala.Cr.App. 1993).
 "`"[A] defendant's mental impairment, even if it exists, is merely one factor affecting the validity of his waiver of rights and the voluntariness of his confession. See generally Annot., 8 A.L.R.4th 16 (1981). `While an accused's intelligence and literacy are important factors to be considered in determining whether he intelligently and voluntarily waived his constitutional rights and made a confession, weak intellect or illiteracy alone will not render a confession inadmissible.' Hobbs v. State, 401 So.2d 276, 282 (Ala.Cr.App. 1981)."
 "`Whittle v. State, 518 So.2d 793, 796-97
(Ala.Cr.App. 1987).'
"672 So.2d at 1337."
Jackson v. State, 791 So.2d 979, 1009-10 (Ala.Crim.App. 2000) (quoting Dobyne v. State, 672 So.2d 1319 (Ala.Crim.App. 1994), aff'd, 672 So.2d 1354 (Ala. 1995)).
Roy Bristow testified that he was a homicide investigator with the Birmingham Police Department; that, between 4:00 p.m. and 5:00 p.m. on December 4, 2002, the appellant was brought to the Birmingham Police Department and placed in a room; that he interviewed the appellant three times; and that the last time he talked to the appellant was around 8:30 p.m. He also testified that the appellant was not in custody at the time of the first statement; that he did not read the appellant his juvenileMiranda[2] rights at that time; that he did not tell the appellant that it would be better or worse for him if he made a statement; that he did not do anything that would make the appellant so happy, angry, upset, or hurt that he did not know what he was doing; that he did not tell the appellant that anything good or bad would happen to him if he did not make a statement; that he talked to the appellant between fifteen and twenty minutes; that the appellant did not make any admissions during that statement; that he told the appellant that he appreciated him coming and talking to him and then he left the room; and that the appellant stayed in the room. Bristow further testified that he and another detective went back into the room about twenty minutes later; that he advised the appellant of his juvenile Miranda rights at that time; that the appellant said that he wanted to talk; that the appellant then read the waiver of rights form out loud and signed it; that he did not threaten the appellant or force him to talk; that he did not do anything that would make the appellant so happy, angry, upset, or hurt that he would not know what he was doing; that he did not tell the appellant it would be better or worse for him if he did not make a statement; that the second interview lasted about thirty-five minutes; that the appellant did not make any admissions during that statement; that, at the end of the second statement, the appellant mentioned something about an attorney, and he did not ask the appellant any questions after that; and that he arrested the appellant and left the room. He testified that, over an hour later, he returned to the room because the appellant was knocking on the door; that, when he opened the door, the appellant said he wanted to talk to him; that he closed the door and went and got a video recorder; that, when he came back, he and another detective established that the appellant wanted to talk to them without an attorney; that he reminded *Page 1121 
the appellant of his Miranda rights, and the appellant indicated that he remembered them; that he did not threaten the appellant or force him to talk; that he did not tell the appellant it would be better or worse for him if he made a statement; that he did not tell the appellant that it would be worse for him if he did not make a statement; and that he did not do anything to make the appellant so happy, angry, or upset that he did not know what he was doing. Bristow also testified that the appellant was sixteen years old; that he believed that both of the appellant's parents were deceased; and that the appellant did not ask to speak to a parent or guardian. Finally, he testified that he did not ask the appellant what grade level he had completed in school or if he had been treated for a mental disorder; that the appellant told him he had smoked marijuana during the twenty-four hours before the interview, but gave conflicting times as to when he actually smoked the marijuana; that it was his impression that the appellant understood what was going on during each of the interviews; and that the appellant seemed to understand what waiving his rights meant.
Based on Bristow's testimony regarding the totality of the circumstances surrounding the making of the statement, the trial court could have reasonably concluded that the appellant knowingly and voluntarily made his statement and that his will was not overborne due to his age, IQ, and the length of time he was in the interrogation room. Further, although the appellant introduced evidence before the court that his IQ was 66, that was just one factor to consider in determining whether he voluntarily waived his Miranda rights. Accordingly, the trial court properly denied his motion to suppress the statement he made to law enforcement officers.
 II.
The appellant also argues that the trial court erroneously convicted him of and sentenced him for three counts of felony murder for the killing of Christian Hill. (Issue I in the appellant's brief.) In Ex parte Rice, 766 So.2d 143 (Ala. 1999), the Alabama Supreme Court held that § 13A-6-2(a)(3), Ala. Code 1975, creates a single offense, even though it provides alternative methods of proving the offense. The supreme court also held that double jeopardy principles prohibit multiple convictions and multiple sentences for felony murder if the convictions and sentences arise from a single killing. In this case, the appellant was convicted of one count of felony murder during a robbery and two counts of felony murder during the commission of a felony clearly dangerous to human life — discharging a firearm into an occupied vehicle. All three convictions arose from the murder of Christian Hill. Therefore, the appellant could not properly be convicted of and sentenced for three counts of felony murder. The trial court sentenced the appellant to serve concurrent terms of life in prison. However, in Rice, the supreme court held:
 "We note that merely ordering that Rice's sentences run concurrently is not a constitutionally acceptable option. The Supreme Court stated in Ball v. United States, 470 U.S. 856, 864-65, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985):
 "`The remedy of ordering one of the sentences to be served concurrently with the other cannot be squared with Congress' intention. One of the convictions, as well as its concurrent sentence, is unauthorized punishment for a separate offense. See Missouri v. Hunter, 459 U.S. 359, 368[, 103 S.Ct. 673, 74 L.Ed.2d 535] (1983).
 "`The second conviction, whose concomitant sentence is served concurrently, *Page 1122 
does not evaporate simply because of the concurrence of the sentence. The separate conviction, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma accompanying any criminal conviction. See Benton v. Maryland, 395 U.S. 784, 790-91[, 89 S.Ct. 2056, 23 L.Ed.2d 707] (1969); Sibron v. New York, 392 U.S. 40, 54-56[, 88 S.Ct. 1889, 20 L.Ed.2d 917] (1968). Thus, the second conviction, even if it results in no greater sentence, is an impermissible punishment.'
 "See, also, Rolling v. State, [673 So.2d 812
(Ala.Crim.App. 1995)].
 "Neither is it an acceptable option to merely vacate one of Rice's convictions and its corresponding sentence. The jury specifically found that Rice had violated § 13A-6-2(a)(3) in two different ways — by participating in a kidnapping and causing Taylor's death and by participating in a robbery and causing Taylor's death. Based on the record before us, an appellate court's vacating one of Rice's convictions and its corresponding sentence would have the effect, albeit unintended, of nullifying a part of the jury's verdict. We think the better approach is for the Court of Criminal Appeals to remand the case to the trial court for the entry of a new order — an order that adjudges Rice guilty of Taylor's murder and sentences him for that single offense."
Rice, 766 So.2d at 152-53. Therefore, we remand this case for the trial court to enter a new order that adjudges the appellant guilty of Hill's murder and sentences him for that single offense. The trial court shall take all necessary action to see that the circuit clerk makes due return to this court at the earliest possible time and within 28 days after the release of this opinion.
REMANDED WITH INSTRUCTIONS.*
McMILLAN, P.J., and COBB, SHAW, and WISE, JJ., concur.
[1] The appellant made three separate statements to law enforcement officers. However, the State introduced only the third statement into evidence.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).
* Note from the reporter of decisions: On May 13, 2005, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On June 10, 2005, that court denied rehearing, without opinion. On August 12, 2005, the Supreme Court denied certiorari review, without opinion (1041421).